■ TALON AIR SERVICES LLC, Appellant, v CMA DESIGN STUDIO, P.C., Also Known as CMA DESIGN STUDIO ARCHITECTS-PLANNERS, P.C., et al., Respondents. [927 NYS2d 643]—

---

Plaintiff Talon Air Services LLC brought this action for professional malpractice and breach of contract against defendants Kevin Koubek, P.E. (Koubek) and CMA Design Studio, P.C. (CMA) in connection with the construction of an aircraft hangar owned and operated by plaintiff. Plaintiff alleges that defendants submitted plans and specifications to the Suffolk County Department of Health Services (DHS) for a single-walled sanitary waste trench, but, because the hangar was to be used for maintenance, a double-walled hazardous waste trench was required pursuant to the Suffolk County Sanitary Code § 760-1210 (article 12). Plaintiff alleges that it suffered damages when it had to replace the single-walled trench with a double-walled trench.

The following facts are established in the record: In or around January 2004, plaintiff entered into an agreement with Atlantic Aviation Services (Atlantic) to jointly sublease land and construct a 30,000-square-foot hangar and 8,000 square feet of office space. On February 3, 2004, plaintiff entered into an agreement with Koubek for mechanical, electrical and plumbing engineering design services including "design[ing] and detail-[ing] . . . required site drainage for the new tarmac area and any required oil separators for the hangar region." On July 9, 2004, plaintiff entered into an agreement with CMA for architectural services. Mechanical and structural engineering services were specifically excluded from CMA's contract.

Construction of the hangar commenced in June 2004. On July 26, 2004, Atlantic submitted an application to the Suffolk County Department of Health Services (DHS) for sewage disposal facilities and water supply systems, which described the hangar as a "New aircraft storage hangar, w/o service or maintenance work." When asked in a Department of Public Works application to list "all . . . processes" to be performed at the hangar, Atlantic responded "N/A Aircraft washing."

On May 2, 2005, plaintiff's vice-president wrote to DHS to confirm that "the only operations conducted in [the hangar]

will be the washing of aircraft." In a reply letter dated May 3, 2005, DHS verified that there would be no "aircraft engine maintenance performed that would necessitate oil changes, hydraulic and brake fluid replacement, painting of aircraft exteriors or any other activity using toxic or hazardous materials." DHS further verified that, based upon plaintiff's declarations, the operation would be viewed as a "vehicle wash station."

DHS stated in the letter that "double-walled equipment [was not required] to be installed within the hangar" and that the "single-walled oil water separator can remain in place and does not need a permit from this office." DHS further stated that "[s]hould the use of the hangar building change to include maintenance activities using toxic or hazardous materials, your operation will be reclassified and the proper double-walled equipment will have to be installed." In a separate memorandum from DHS to Koubek dated May 6, 2005, DHS confirmed that the "vehicle/airplane wash system incorporation is exempt from Article 12 requirements."

The hangar and trench were put into operation in June 2005 and inspected by DHS on July 5, 2005. DHS concluded that plaintiff was occupying the hangar and improperly discharging waste into a sewage facility without "final approval." Because plaintiff was authorized to discharge only sanitary waste, "any wastewater generated from the hangar area [could] not be discharged to the sewer."

The drain for the trench was subsequently plugged and capped while a double-walled trench and oil water separator were installed. On August 2, 2007, plaintiff initiated this action alleging that as a result of defendants' failure to properly design the trench, the hangar was not fully functional until July 2007 when the double-walled trench was completed.

Plaintiff's president testified at deposition that plaintiff "always" intended to use the hangar for maintenance, and that "[e]veryone knew it." However, later in the deposition, he admitted that the decision to perform maintenance was made after May 2005. Plaintiff's president conceded that as of May 6, 2005, plaintiff did not intend to use or store any toxic or hazardous materials in the hangar.

On March 26, 2009, Koubek moved for summary judgment dismissal of the complaint against him on the grounds that plaintiff represented to DHS that the hangar would only be used for storage and washing, and that DHS had determined that article 12 was not applicable. Koubek asserts that his plans and specifications, including the single-walled trench, were consistent with good and accepted engineering practices.

On March 31, 2009, CMA also moved for summary judgment dismissal on the grounds that, inter alia, Koubek, not CMA, was responsible for the design and specifications of the trench. CMA maintains that it rendered services in accordance with accepted architectural design standards.

Plaintiff cross-moved for summary judgment on May 14, 2009. In support, plaintiff submitted, inter alia, the expert opinion of the engineer who was hired by plaintiff to design the double-walled trench that replaced the single-walled trench. Based on his review of defendants' site drawings as well as a site visit, plaintiff's expert opined that defendants' work did not meet generally accepted industry standards because the trench did not comply with article 12. He stated that Koubek's use of another engineer's designs deviated from standard practices, and that it is "patently improper for any licensed design professional . . . to advise a client to commence construction prior to the issuance of any necessary . . . permits."

Plaintiff's expert concluded that completion of the project in compliance with article 12 "enabled the [h]angar to operate as originally intended by [plaintiff]," including the storage of toxic or flammable materials. The expert further opined that article 12 would "likely" be applicable to the project even if the hangar was only used for washing aircraft because washing aircraft "could" release toxic materials.

On September 8, 2009, the motion court granted defendants' motions for summary judgment. The court found that CMA was not contractually responsible for designing the trench and performed no work on the trench. The court also found that the allegation that Koubek breached his contract by failing to design the trench in accordance with article 12, "for which there was an applied for, documented, and utilized exemption, is implausible on its face."

The court concluded that the proximate cause of plaintiff's injury was not "the completion of the project in compliance with the declared intended use," but plaintiff's "change in the intended use, for which [plaintiff] alone is responsible." On appeal, plaintiff argues that the motion court erred in disregarding the opinion of its expert. Plaintiff also argues that the motion court "conflated" the claims against Koubek and CMA, and that the claims against CMA stem from its selection of Koubek for the project and its advice to plaintiff to commence construction prior to the issuance of necessary permits.

For the following reasons, we affirm. Defendants established prima facie that they were neither negligent nor breached their contracts (*see generally Alvarez v Prospect Hosp.*, 68 NY2d 320

[1986]). Defendants submitted evidence that plaintiff represented to DHS that it intended to use the hangar only for the storage and washing of aircraft and that there would be no toxic or hazardous materials on the premises. Defendants further demonstrated that based on these representations, DHS determined that the project was exempt from the requirements of article 12, and a double-walled trench was not required. CMA also submitted evidence that it had no contractual duty regarding the planning and installation of the trench.

In opposition, plaintiff failed to raise a triable issue of fact. A claim of professional malpractice "requires proof that there was a departure from accepted standards of practice and that the departure was a proximate cause of the injury" (*D.D. Hamilton Textiles v Estate of Mate*, 269 AD2d 214, 215 [2000], citing *Georgetti v United Hosp. Med. Ctr.*, 204 AD2d 271 [1994]). No such showing was made here.

Plaintiff failed to adduce credible expert testimony that defendants deviated from locally prevailing standards of practice (*see Tower Bldg. Restoration v 20 E. 9th St. Apt. Corp.*, 7 AD3d 407, 408 [2004], citing *530 E. 89 Corp. v Unger*, 43 NY2d 776 [1977]). An expert's opinion, which is not supported, and indeed is refuted by facts established in the record, has little probative value (*see Cassano v Hagstrom*, 5 NY2d 643, 646 [1959] [a witness may not reach his conclusion by assuming material facts not supported by evidence]; *Cillo v Resjefal Corp.*, 16 AD3d 339, 340 [2005], citing *Castro v New York Univ.*, 5 AD3d 135 [2004]; *see e.g. Gerber Trade Fin., Inc. v Skwiersky, Alpert & Bressler, LLP*, 12 AD3d 286 [2004], *lv denied* 4 NY3d 705 [2005]).

Here, plaintiff's expert's opinion, that the trench design was inadequate because it did not comply with article 12, presumes that article 12 was applicable to plaintiff's project when the trench was designed. However, as plaintiff testified, the decision to perform maintenance was not made until the month before construction was completed. The record establishes that until that time, the intended use of the hangar was limited to aircraft washing, article 12 did not apply, and no permits for double-walled equipment were required. Furthermore, his assertion that defendants should have anticipated that article 12 would "likely" apply to aircraft washing is plainly controverted by the DHS's contrary determination (*see e.g. Lynn G. v Hugo*, 96 NY2d 306, 310 [2001]).

Plaintiff's expert opined that Koubek's use of plans from a different project and failure to familiarize himself with article 12 were deviations from accepted practice. Even were we to agree, such deviations were not the proximate cause of plaintiff's

injury. Rather, it is plaintiff's own conduct—changing the intended use of the hanger—that proximately caused its injury (*see e.g. D.D. Hamilton Textiles*, 269 AD2d at 215 ["'(p)laintiffs' ultimate failure to address . . . whether their dilemma was the result of their own malfeasance . . . highlights the insufficiency of their contention that there was a departure from accepted standards"]; *Gerber Trade Fin., Inc.*, 12 AD3d at 286).

The same infirmities afflict plaintiff's contract claim against Koubek. Koubek's design of a single-walled trench is not breach of "an implied promise to exercise due care" (*17 Vista Fee Assoc. v Teachers Ins. & Annuity Assn. of Am.*, 259 AD2d 75, 84 [1999] [internal quotation marks omitted]), because, based on plaintiff's representations, DHS had determined that a double-walled trench was not required.

Plaintiff's argument that CMA improperly selected Koubek as the mechanical engineer on the project is unavailing. Neither the complaint nor the bill of particulars includes such a claim. In any event, CMA was not responsible, under its agreement, for the selection of the mechanical engineer; plaintiff contracted directly with Koubek.

We have considered plaintiff's remaining contentions and find them meritless. Concur—Andrias, J.P., Catterson, Moskowitz, Abdus-Salaam and Román, JJ. **[Prior Case History: 2009 NY Slip Op 32027(U).]**